IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| In re:<br><br>ASCENSION TOWING AND RECOVERY, LLC,<br><br>*Debtor-in-Possession*. | Case No. 26-10439<br><br>Chapter 11 (Subchapter V) |

**ORIGINAL SUBCHAPTER V PLAN**
**DATED MONDAY, AUGUST 17, 2026**
**FILED BY ASCENSION TOWING AND RECOVERY, LLC**

Submitted by:

**STERNBERG, NACCARI & WHITE, LLC**

By: **/s/ Ryan J. Richmond**
Ryan J. Richmond (La. Bar No. 30688)
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801
Tel.: (225) 412-3667
Fax: (225) 286-3046
Email: ryan@snw.law

*Attorneys for Ascension Towing and Recovery, LLC*

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE. THIS PLAN IS PROPOSED BY PERNA OIL & GAS LLC AND IS SUBJECT TO COURT APPROVAL AFTER OPPORTUNITY FOR OBJECTIONS AND A HEARING.**

## BACKGROUND

### A. Description And History Of The Debtor's Business

Ascension Towing and Recovery, LLC (the "Debtor" or the "Company" or "Ascension") is a Louisiana limited liability company whose sole member and manager is Frank Credidio. The Debtor provides towing and recovery services 24 hours a day, seven days a week, for vehicles of varying types and sizes.

Frank Credidio operated the Debtor successfully for many years. After he decided to retire, he transferred management of the Debtor to Bridget Arceneaux, Kristy Jaeger, Aaron Arceneaux, and Lance Jaeger who immediately began to mismanage the business. They incurred unsustainable debts and lost valued customers, forcing Frank Credidio to return to management. Since his return, Frank Credidio has stabilized operations.

### B. Liquidation Analysis

To confirm this Plan, the Bankruptcy Court must find that all holders of Allowed Claims who do not accept this Plan will receive at least as much under the Plan as such holders would receive in a chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit A.**

The liquidation analysis reveals that in a hypothetical chapter 7, holders of Allowed General Unsecured Claims would receive a distribution of $[•].

The Debtor used a discount rate of 2.75% to determine the present value to be received by holders of Allowed General Unsecured Claims. The Debtor estimates that the amount of Allowed General Unsecured Claims is $[•]. The Debtor estimates that, under this Plan, holders of Allowed General Unsecured Claims will receive estimated present value of 100% of the aggregate amount of Allowed General Unsecured Claims.

### C. Feasibility And The Debtor's Ability To Make Future Plan Payments And Operate Without Further Reorganization

The Debtor must show that there will be enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Debtor's projected financial information in **Exhibit B** is based on historical data, current performance, expected orders, and the management's experience. The Debtor projects sufficient funds to make distributions to holders of Allowed Claims.

***You should consult with your accountant, financial advisor and/or attorney if you have questions pertaining to the Debtor's projections.***

## ARTICLE 1
## SUMMARY

The Plan proposes that the Debtor will pay its Projected Disposable Income to holders of Allowed Claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has *not* been circulated with this Plan and will not be prepared unless by further order of the bankruptcy court.

***YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.***

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND INTERESTS

| Class | Claim or Interest | Voting Rights | Payments |
|---|---|---|---|
| 1 | SBA | Impaired. Entitled to vote. | |
| 2 | Kapitus | Impaired. Entitled to vote. | |
| 3 | Stearns Bank | Impaired. Entitled to vote. | Sixty monthly payments of $1,581.55. |
| 4 | Regions Bank | Impaired. Entitled to vote. | One Hundred twenty monthly payments of $2,608.98 |
| 5 | Ben Martin | Impaired. Entitled to vote. | One Hundred twenty monthly payments of $999.18. |
| 6 | General Unsecured Claims | Impaired. Entitled to vote. | |
| 7 | Equity Securities | Deemed to have accepted the Plan. | Holders of Equity Securities shall retain their membership interests. |

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

### 3.1 Unclassified Claims

Under § 1123(a)(1), administrative expense claims and Priority Tax Claims are not in classes.

3.2 **Administrative Claims**

Ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade creditors.

Allowed Professional Fees are those fees and expenses incurred post-petition by Professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the Chapter 11 Case as well as the fees and expenses of the Subchapter V Trustee. Applications to approve, on a final basis, Allowed Professional Fee must be filed not later than the Administrative Claims Bar Date.

| Claimant | Role | Estimated Net Claim | Estimated Monthly Payment |
|---|---|---|---|
| Sternberg, Naccari & White, LLC | Attorneys for the Debtor | $18,000 | $750.00 |
| Diez, Dupuy & Ruiz, LLC | Accountants and CPAs for the Debtor | $6,000 | $250.00 |
| Leon Congeni | Subchapter V Trustee | $6,000 | $250.00 |
| **TOTAL** | | **$30,000** | **$1,250.00** |

The amounts in the table above are estimates net of any retainers or escrows held by Professionals. Sternberg, Naccari & White, LLC holds $9,164.00 in its trust account for post-petition fees and expenses.

Each holder of a Professional Fee Claim shall file an application for allowance of compensation and reimbursement of expenses within the time established by the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules, or an order confirming the Plan. Each Professional Fee Claim shall be allowed only by a Final Order of the Bankruptcy Court.

Retainers, interim compensation, and any other amounts previously received shall be credited against the compensation and expenses ultimately allowed. Only the unpaid balance remaining after application of those credits shall be payable under the Plan.

Each holder of an Allowed Professional Fee Claim shall receive payment of the unpaid net amount of its Allowed Professional Fee Claim in twenty-four (24) equal monthly installments, without interest. Payments shall begin on the first Business Day of the first full calendar month following the later of: (1) the Effective Date; or (2) entry of a Final Order allowing the Professional Fee Claim.

The monthly payment to each holder shall equal one twenty-fourth (1/24) of its Allowed Professional Fee Claim. The final installment shall be adjusted as necessary to account for rounding or any other amount required to pay the Allowed Professional Fee Claim in full.

The estimated aggregate monthly payment shall be $1,250.00. If the Allowed amount of any Professional Fee Claim differs from the estimated amount, the monthly payment to that holder shall be adjusted so that the actual unpaid net Allowed Professional Fee Claim is paid in twenty-four equal monthly installments.

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, the treatment provided by this Section shall apply only to a holder that agrees to such treatment within the meaning of section 1129(a)(9)(A). Any holder that does not agree to deferred payment shall receive the treatment required by section 1129(a)(9)(A), unless the Debtor and that holder otherwise agree.

If the Plan is confirmed under section 1191(b), the Professional Fee Claims shall be paid through the Plan as permitted by section 1191(e) of the Bankruptcy Code.

No interest shall accrue or be paid on an Allowed Professional Fee Claim unless otherwise ordered by the Bankruptcy Court or agreed to in writing by the Debtor and the holder.

The Bankruptcy Court shall retain jurisdiction after confirmation and the Effective Date to consider and determine all applications for allowance of Professional Fee Claims and any objections thereto.

**EXCEPT AS PROVIDED IN § 503(B)(1)(D) OF THE BANKRUPTCY CODE, ALL ADMINISTRATIVE CLAIMS MUST BE NOTICED FOR HEARING AND ARE SUBJECT TO REVIEW AND APPROVAL BY THE BANKRUPTCY COURT.**

3.3 **Tax Claims**.

Priority Tax Claims are unsecured income, employment and other taxes described by § 507(a)(8) of the Bankruptcy Code and those that have arisen post-petition. Pursuant to §§ 507(a)(8) and 1129(a)(9)(C) of the Bankruptcy Code, holders of Allowed Priority Tax Claims shall be paid in full, with interest, in deferred cash payments over a period not to exceed five (5) years from the Petition Date.

Payments on account of Allowed Priority Tax Claims shall commence on the Initial Distribution Date, and shall continue in equal monthly installments on each Distribution Date thereafter through May 19, 2031, which is the fifth (5th) anniversary of the Petition Date. Each monthly payment shall include principal and interest sufficient to fully amortize the Allowed Claim over the remaining term.

Nothing in this provision shall impair the Debtor's right to object to or seek to estimate any Priority Tax Claim. In the event an objection to a Priority Tax Claim is pending as of the Effective Date, payments on the disputed portion of such Claim shall be withheld pending resolution of the objection, and any Allowed amount shall be paid in accordance with this provision as if such amount had been allowed as of the Effective Date, with appropriate catch-up payments and interest.

## ARTICLE 4
## TREATMENT OF CLAIM AND INTEREST UNDER THE PLAN

Claims and Interests shall be treated as follows under this Plan. Claims and Interests that are Impaired are entitled to vote to accept or reject the Plan.

| **Class** | **Impairment** | **Treatment** |
|---|---|---|
| 1 | Impaired.<br><br>Entitled to Vote. | **A. Classification and Allowance.** Class 1 consists of the Claim asserted by the United States Small Business Administration (the "SBA") in the amount of $150,263.96. The SBA's Claim shall be Allowed as a Secured Claim only to the extent of the value, determined under section 506(a) of the Bankruptcy Code, of the Debtor's property subject to the SBA's valid, enforceable, and perfected liens (the "SBA Collateral"). Any portion of the SBA's Allowed Claim exceeding the value of the SBA Collateral shall constitute an Allowed General Unsecured Claim and shall receive the treatment provided to Class 6.<br><br>**B. Priority.** To the extent that the SBA and Kapitus, LLC ("Kapitus") hold valid, enforceable, and perfected liens against the same property, the SBA's liens shall be senior to the liens of Kapitus. Nothing in the Plan shall grant the SBA a lien against property that was not subject to its liens on the Petition Date, except to the extent of any replacement lien granted by an order of the Bankruptcy Court or otherwise expressly authorized by the Plan.<br><br>**C. Valuation.** The amount of the SBA's Allowed Secured Claim shall be determined by agreement between the Debtor and the SBA or, absent agreement, by Final Order of the Bankruptcy Court. In determining the amount of the SBA's Allowed Secured Claim:<br><br>1. cash shall be valued at its face amount only to the extent subject to the SBA's valid and perfected lien;<br><br>2. accounts receivable shall be valued at their net realizable value after accounting for collectability, aging, customer defenses, offsets, and reasonable collection expenses;<br><br>3. cash derived from the collection of an account receivable shall not be valued separately from the account receivable from which it was derived; and<br><br>4. post-petition revenues and accounts receivable shall not constitute SBA Collateral merely by virtue of a prepetition after-acquired-property provision, except to the extent they constitute identifiable proceeds under section 552(b) of the Bankruptcy Code or are subject to a replacement lien granted by an order of the Bankruptcy Court.<br><br>**D. Establishment of SBA Disputed Claims Reserve.** On or before the first payment date under the Plan, the Reorganized Debtor shall establish a segregated, interest-bearing subaccount for the SBA within the disputed claims reserve established under the Plan (the "SBA Reserve"). The |

| | | |
|---|---|---|
| | | Reorganized Debtor or other Disbursing Agent designated under the Plan shall administer the SBA Reserve.<br><br>Funds deposited into the SBA Reserve shall not constitute property of the SBA and shall not be distributed to the SBA except pursuant to a Final Order determining the allowance, secured status, priority, and amount of the SBA's Claim or pursuant to an agreement between the Debtor and the SBA approved by the Bankruptcy Court.<br><br>**E. Monthly Deposits.** Beginning on the first Business Day of the first full calendar month following the Effective Date, the Reorganized Debtor shall deposit $2,750.42 per month into the SBA Reserve. This amount is based upon payment of the SBA's asserted Claim of $150,263.96 over sixty (60) months with interest at a fixed rate of 3.75% per annum.<br><br>The Reorganized Debtor shall continue making these deposits until the earliest of:<br><br>1. completion of sixty (60) monthly deposits;<br>2. payment in full of the SBA's Allowed Claim under the Plan; or<br>3. entry of a Final Order or approved agreement providing different treatment.<br><br>The sixtieth and final deposit shall be adjusted as necessary to account for payment rounding.<br><br>**F. Treatment Pending Final Determination.** Until the SBA's Claim is determined by Final Order or approved agreement:<br><br>1. the Reorganized Debtor shall continue making the deposits required by Paragraph E;<br>2. the SBA shall receive no distribution from the SBA Reserve;<br>3. the funds held in the SBA Reserve shall remain subject to further order of the Bankruptcy Court;<br>4. neither the establishment nor funding of the SBA Reserve shall constitute adequate protection, an admission that the SBA is secured, or an enhancement, perfection, expansion, or other improvement of any lien or right asserted by the SBA; and<br>5. subject to the Reorganized Debtor's timely compliance with this Section, the SBA shall be enjoined from exercising remedies against the Debtor, the Reorganized Debtor, or property of the estate on account of its prepetition Claim without further order of the Bankruptcy Court. |

**G. Treatment Following Final Determination.**

1. **Allowed Secured Claim.** To the extent the SBA's Claim is Allowed as secured, the SBA shall receive the funds allocated to the secured portion of the SBA Reserve, together with the proportionate share of interest actually earned by the SBA Reserve. Those funds shall be credited against the SBA's Allowed Secured Claim. Thereafter, the Reorganized Debtor shall pay the remaining balance of the SBA's Allowed Secured Claim directly to the SBA over the balance of the original sixty-month payment period, with interest at 3.75% per annum.

2. **Allowed General Unsecured Claim.** To the extent the SBA's Claim is Allowed as unsecured, that portion shall be included in Class 6 and shall receive the treatment provided to that Class. Funds in the SBA Reserve attributable to the unsecured portion shall be transferred to the account used to fund distributions to holders of Allowed General Unsecured Claims. The SBA shall participate in general unsecured distributions on the same basis as other holders of Allowed General Unsecured Claims and shall not receive the reserved funds exclusively on account of its unsecured Claim.

3. **Partially Secured Claim.** If the SBA's Claim is Allowed partly as secured and partly as unsecured, the SBA Reserve shall be allocated between those portions in the proportions determined by the Final Order. The secured portion shall receive the treatment provided by Paragraph G.1, and the unsecured portion shall receive the treatment provided by Paragraph G.2.

4. **Disallowed Claim.** To the extent the SBA's Claim is disallowed, the corresponding funds in the SBA Reserve shall first be available to satisfy distributions and other obligations required by the Plan. After satisfaction of all Plan obligations, any remaining funds shall revest in the Reorganized Debtor free and clear of any interest asserted by the SBA.

**H. Retention and Release of Liens.** Pending a Final Order, the SBA shall retain only those liens, if any, that were valid, enforceable, and perfected on the Petition Date, without enhancement under the Plan. If the SBA is determined to hold an Allowed Secured Claim, it shall retain its valid, enforceable, and perfected liens against the SBA Collateral until its Allowed Secured Claim has been paid in full. If the SBA is determined not to hold an Allowed Secured Claim, its asserted liens shall be deemed extinguished upon entry of the Final Order making that determination.

Upon payment in full of the SBA's Allowed Secured Claim, the SBA's liens shall be deemed satisfied and released, and the SBA shall promptly execute any documents reasonably necessary to evidence their termination.

**I. Credit and No Double Recovery.** Every distribution made from the

| | | |
|---|---|---|
| | | SBA Reserve shall reduce the SBA's Allowed Claim dollar-for-dollar. The SBA may not recover more than the total amount payable on its Allowed Claim under the Plan.<br><br>**J. Reporting.** The Reorganized Debtor shall identify the balance of the SBA Reserve in its reports concerning Plan distributions. Upon reasonable written request, the Reorganized Debtor shall provide the SBA and the Subchapter V Trustee with a statement showing deposits, withdrawals, interest earned, and the balance of the SBA Reserve.<br><br>**K. Default.** If the Reorganized Debtor fails to make a required deposit, the SBA shall provide written notice of the default to the Reorganized Debtor and its counsel. The Reorganized Debtor shall have fifteen (15) days after receipt of the notice to cure. If the default is not timely cured, the SBA may seek appropriate relief from the Bankruptcy Court.<br><br>**L. Impairment.** Class 1 is impaired under the Plan. |
| 2 | Impaired.<br><br>Entitled to Vote. | **A. Classification and Allowance.** Class 2 consists of the Claim asserted by Kapitus in the amount of $359,142.39. Kapitus shall hold an Allowed Secured Claim only to the extent that the value of property subject to its valid, enforceable, and perfected liens exceeds the amount of all Claims secured by liens senior to those of Kapitus, including the SBA's senior lien. Any remaining portion of Kapitus's Allowed Claim shall constitute an Allowed General Unsecured Claim and shall receive the treatment provided to Class 6.<br><br>**B. Debtor's Position and Reservation of Rights.** Based upon the information presently available, the Debtor disputes whether any equity exists in Kapitus's alleged collateral after accounting for the SBA's senior lien. The Debtor reserves all rights to object to Kapitus's Claim and to challenge the validity, extent, priority, enforceability, or perfection of any lien asserted by Kapitus.<br><br>Nothing in the Plan or the funding of the reserve described below constitutes an admission that Kapitus holds an Allowed Secured Claim or a valid, enforceable, and perfected lien against any property.<br><br>**C. Determination of Secured Amount.** The amount of Kapitus's Allowed Secured Claim, if any, shall be determined by agreement between the Debtor and Kapitus or, absent agreement, by Final Order of the Bankruptcy Court. In determining that amount:<br><br>1. the SBA's Allowed Secured Claim and all other senior liens shall be deducted first from the value of property subject to both creditors' liens;<br><br>2. cash shall be included only to the extent subject to a valid and perfected lien held by Kapitus; |

3. accounts receivable shall be valued at their net realizable value;

4. cash collected from an account receivable shall not be counted in addition to the value of that account receivable; and

5. pos-tpetition revenues and accounts receivable shall not constitute Kapitus collateral merely by virtue of a prepetition after-acquired-property provision, except to the extent they constitute identifiable proceeds under section 552(b) of the Bankruptcy Code or are subject to a replacement lien granted by an order of the Bankruptcy Court.

**D. Establishment of Kapitus Disputed Claims Reserve.** On or before the first payment date under the Plan, the Reorganized Debtor shall establish a segregated, interest-bearing subaccount for Kapitus within the disputed claims reserve established under the Plan (the "Kapitus Reserve"). The Reorganized Debtor or other Disbursing Agent designated under the Plan shall administer the Kapitus Reserve.

Funds deposited into the Kapitus Reserve shall not constitute property of Kapitus and shall not be distributed to Kapitus except pursuant to a Final Order determining the allowance, secured status, priority, and amount of Kapitus's Claim or pursuant to an agreement between the Debtor and Kapitus approved by the Bankruptcy Court.

**E. Monthly Deposits.** Beginning on the first Business Day of the first full calendar month following the Effective Date, the Reorganized Debtor shall deposit $6,943.23 per month into the Kapitus Reserve. This amount is based upon payment of Kapitus's asserted Claim of $359,142.39 over sixty (60) months with interest at a fixed rate of 6.0% per annum.

The Reorganized Debtor shall continue making these deposits until the earliest of:

1. completion of sixty (60) monthly deposits;

2. payment in full of Kapitus's Allowed Claim under the Plan; or

3. entry of a Final Order or approved agreement providing different treatment.

The sixtieth and final deposit shall be adjusted as necessary to account for payment rounding.

**F. Treatment Pending Final Determination.** Until Kapitus's Claim is determined by Final Order or approved agreement:

1. the Reorganized Debtor shall continue making the deposits required by Paragraph E;

2. Kapitus shall receive no distribution from the Kapitus Reserve;

3. the funds held in the Kapitus Reserve shall remain subject to further order of the Bankruptcy Court;

4. neither the establishment nor funding of the Kapitus Reserve shall constitute adequate protection, an admission that Kapitus is secured, or an enhancement, perfection, expansion, or other improvement of any lien or right asserted by Kapitus; and

5. subject to the Reorganized Debtor's timely compliance with this Section, Kapitus shall be enjoined from exercising remedies against the Debtor, the Reorganized Debtor, or property of the estate on account of its prepetition Claim without further order of the Bankruptcy Court.

**G. Treatment Following Final Determination.**

1. **Allowed Secured Claim.** To the extent Kapitus's Claim is Allowed as secured, Kapitus shall receive the funds allocated to the secured portion of the Kapitus Reserve, together with the proportionate share of interest actually earned by the Kapitus Reserve. Those funds shall be credited against Kapitus's Allowed Secured Claim. Thereafter, the Reorganized Debtor shall pay the remaining balance of Kapitus's Allowed Secured Claim directly to Kapitus over the balance of the original sixty-month payment period, with interest at 6.0% per annum.

2. **Allowed General Unsecured Claim.** To the extent Kapitus's Claim is Allowed as unsecured, that portion shall be included in Class [General Unsecured Claims] and shall receive the treatment provided to that Class. Funds in the Kapitus Reserve attributable to the unsecured portion shall be transferred to the account used to fund distributions to holders of Allowed General Unsecured Claims. Kapitus shall participate in general unsecured distributions on the same basis as other holders of Allowed General Unsecured Claims and shall not receive the reserved funds exclusively on account of its unsecured Claim.

3. **Partially Secured Claim.** If Kapitus's Claim is Allowed partly as secured and partly as unsecured, the Kapitus Reserve shall be allocated between those portions in the proportions determined by the Final Order. The secured portion shall receive the treatment provided by Paragraph G.1, and the unsecured portion shall receive the treatment provided by Paragraph G.2.

4. **No Allowed Secured Claim.** If Kapitus is determined not to hold an Allowed Secured Claim, Kapitus's Allowed Claim shall be treated entirely in Class [General Unsecured Claims], and its asserted liens shall be extinguished upon entry of the Final Order

| | | |
|---|---|---|
| | | making that determination.<br><br>5. **Disallowed Claim.** To the extent Kapitus's Claim is disallowed, the corresponding funds in the Kapitus Reserve shall first be available to satisfy distributions and other obligations required by the Plan. After satisfaction of all Plan obligations, any remaining funds shall revest in the Reorganized Debtor free and clear of any interest asserted by Kapitus.<br><br>**H. Retention and Release of Liens.** Pending a Final Order, Kapitus shall retain only those liens, if any, that were valid, enforceable, and perfected on the Petition Date, subject to all senior liens and without enhancement under the Plan. If Kapitus is determined to hold an Allowed Secured Claim, it shall retain its valid, enforceable, and perfected liens against its collateral, subject to the SBA's senior lien and all other senior liens, until its Allowed Secured Claim has been paid in full.<br><br>Upon payment in full of Kapitus's Allowed Secured Claim, Kapitus's liens shall be deemed satisfied and released, and Kapitus shall promptly execute any documents reasonably necessary to evidence their termination.<br><br>**I. Credit and No Double Recovery.** Every distribution made from the Kapitus Reserve shall reduce Kapitus's Allowed Claim dollar-for-dollar. Kapitus may not recover more than the total amount payable on its Allowed Claim under the Plan.<br><br>**J. Reporting.** The Reorganized Debtor shall identify the balance of the Kapitus Reserve in its reports concerning Plan distributions. Upon reasonable written request, the Reorganized Debtor shall provide Kapitus and the Subchapter V Trustee with a statement showing deposits, withdrawals, interest earned, and the balance of the Kapitus Reserve.<br><br>**K. Default.** If the Reorganized Debtor fails to make a required deposit, Kapitus shall provide written notice of the default to the Reorganized Debtor and its counsel. The Reorganized Debtor shall have fifteen (15) days after receipt of the notice to cure. If the default is not timely cured, Kapitus may seek appropriate relief from the Bankruptcy Court.<br><br>**L. Impairment.** Class 2 is impaired under the Plan. |
| 3 | Impaired.<br><br>Entitled to Vote. | **A. Classification and Allowance.** Class 3 consists of the Claim of Stearns Bank evidenced by Proof of Claim No. 9-1. Stearns Bank asserts a Claim totaling $126,052.32, secured by a 2002 Peterbilt 357 tow truck bearing VIN 1NPALB0X22D581798 (the "Peterbilt").<br><br>Under section 506(a) of the Bankruptcy Code, Stearns Bank shall have an Allowed Secured Claim of $81,806.67, representing the agreed value of the Peterbilt, and an Allowed General Unsecured Claim of $44,245.65. The Allowed General Unsecured Claim shall receive the treatment provided to Class 6. |

| | | |
|---|---|---|
| | | **B. Treatment of Allowed Secured Claim.** Beginning on the first Business Day of the first full calendar month following the Effective Date, the Debtor shall pay Stearns Bank's Allowed Secured Claim in sixty (60) consecutive monthly installments based upon:<br><br>1. a principal amount of $81,806.67;<br><br>2. interest at a fixed rate of 6.0% per annum; and<br><br>3. a sixty-month amortization period.<br><br>The first fifty-nine (59) monthly installments shall be $1,581.55 each. The sixtieth and final installment shall equal all remaining principal, accrued interest, and other amounts payable under the Plan, which is estimated to be $1,581.70 after accounting for payment rounding. Payments shall be applied first to accrued interest and then to principal.<br><br>**C. Retention of Lien.** Until Stearns Bank's Allowed Secured Claim has been paid in full, Stearns Bank shall retain its valid, enforceable, and perfected lien against the Peterbilt to the same extent and priority existing on the Petition Date. Stearns Bank's retained lien shall secure only its Allowed Secured Claim and shall not secure its Allowed General Unsecured Claim or any amount disallowed under the Plan or by order of the Bankruptcy Court.<br><br>**D. Possession, Use, and Maintenance of Collateral.** The Debtor shall retain possession and use of the Peterbilt. Until Stearns Bank's Allowed Secured Claim has been paid in full, the Debtor shall maintain the Peterbilt in reasonable operating condition, ordinary wear and tear excepted; maintain insurance covering the Peterbilt in the amounts required by applicable law and consistent with the Debtor's ordinary business practices; and identify Stearns Bank as a lienholder and loss payee to the extent of its interest. Upon reasonable written request, the Debtor shall provide Stearns Bank with evidence of such insurance.<br><br>**E. Satisfaction and Release of Lien.** Upon payment in full of Stearns Bank's Allowed Secured Claim, Stearns Bank's lien against the Peterbilt shall be deemed fully satisfied and released. Stearns Bank shall promptly deliver the certificate of title and execute any documents reasonably necessary to evidence the satisfaction and release of its lien.<br><br>**F. Default and Remedies.** If the Debtor fails to make a payment required by this Section or fails to maintain required insurance on the Peterbilt, Stearns Bank shall provide the Debtor and Debtor's counsel with written notice of the default. The Debtor shall have fifteen (15) days after receipt of the notice to cure a payment default and ten (10) days after receipt of the notice to cure an insurance default. If the Debtor fails to timely cure, Stearns Bank may exercise its rights and remedies under the Plan, the Bankruptcy Code, and applicable nonbankruptcy law, subject to any applicable requirement for relief from the automatic stay or further order |

<table>
<tr><td></td><td></td><td>of the Bankruptcy Court.<br><br>G. Impairment. Class 3 is impaired under the Plan.</td></tr>
<tr><td>4</td><td>Impaired.<br><br>Entitled to Vote.</td><td>A. Classification and Allowance. Class 4 consists of the secured Claim of Regions Bank. Although Regions Bank did not file a proof of claim, the Debtor scheduled Regions Bank’s aggregate Claim in the amount of $250,000.00. To the extent the Claim was scheduled as undisputed, noncontingent, and liquidated, it shall be deemed filed under section 1111(a) of the Bankruptcy Code.<br><br>Regions Bank’s Claim is secured by the Debtor’s real property located at 14407 Highway 431, St. Amant, LA 70774, together with all improvements, fixtures, rents, proceeds, and other interests subject to Regions’ valid liens (collectively, the “<u>Regions Collateral</u>”).<br><br>Based upon the agreed value of the Regions Collateral, Regions Bank shall have:<br><br>1. an Allowed Secured Claim of $235,000.00; and<br><br>2. an Allowed General Unsecured Claim of $15,000.00.<br><br>The Allowed General Unsecured Claim shall receive the treatment provided to Class 6.<br><br>B. Treatment of Allowed Secured Claim. Beginning on the first Business Day of the first full calendar month following the Effective Date, the Debtor shall pay Regions Bank’s Allowed Secured Claim in one hundred twenty (120) consecutive monthly installments based upon:<br><br>1. a principal amount of $235,000.00;<br><br>2. interest at a fixed rate of 6.0% per annum; and<br><br>3. a 120-month amortization period.<br><br>The first one hundred nineteen (119) monthly installments shall be $2,608.98 each. The 120th and final installment shall equal all remaining principal and accrued interest, which is estimated to be $2,609.27 after accounting for payment rounding. Payments shall be applied first to accrued interest and then to principal. No balloon payment shall be due.<br><br>C. Retention of Liens. Until Regions Bank’s Allowed Secured Claim has been paid in full, Regions Bank shall retain its valid, enforceable, and perfected liens against the Regions Collateral to the same extent and priority existing on the Petition Date. Regions Bank’s retained liens shall secure only its Allowed Secured Claim and shall not secure its Allowed General Unsecured Claim or any amount disallowed under the Plan or by order of the Bankruptcy Court.</td></tr>
</table>

**D. Possession and Use of Collateral.** The Debtor shall retain possession and use of the Regions Collateral. The vesting of the Regions Collateral in the Reorganized Debtor shall be subject to Regions Bank's retained liens and the treatment provided under the Plan.

**E. Taxes, Insurance, and Maintenance.** Until Regions Bank's Allowed Secured Claim has been paid in full, the Debtor shall:

1. maintain the Regions Collateral in reasonable condition, ordinary wear and tear excepted;

2. timely pay all post-petition ad valorem taxes and assessments attributable to the Regions Collateral before they become delinquent;

3. maintain property and casualty insurance covering the Regions Collateral in amounts consistent with the Debtor's prepetition obligations and ordinary business practices; and

4. identify Regions Bank as mortgagee and loss payee under the applicable insurance policies to the extent of its interest.

Upon reasonable written request, the Debtor shall provide Regions Bank with evidence of payment of applicable taxes and maintenance of required insurance.

**F. Prepayment.** The Debtor may prepay all or any portion of Regions Bank's Allowed Secured Claim at any time without premium, penalty, or other charge. Any partial prepayment shall be applied first to accrued interest and then to principal and shall not postpone the due date of any subsequent monthly installment unless Regions Bank agrees otherwise in writing.

**G. Satisfaction and Release of Liens.** Upon payment in full of Regions Bank's Allowed Secured Claim, Regions Bank's liens against the Regions Collateral shall be deemed fully satisfied and released. Regions Bank shall promptly execute and deliver any cancellation, release, or other documents reasonably necessary to evidence the satisfaction and release of its liens in the applicable public records.

**H. Default and Remedies.** If the Debtor fails to make a payment required under this Section, fails to maintain required insurance, or fails to timely pay postpetition taxes or assessments attributable to the Regions Collateral, Regions Bank shall provide the Debtor and Debtor's counsel with written notice identifying the alleged default. The Debtor shall have:

1. fifteen (15) days after receipt of the notice to cure a payment default; and

2. ten (10) days after receipt of the notice to cure an insurance or tax

| | | |
|---|---|---|
| | | default.<br><br>If the Debtor fails to timely cure the default, Regions Bank may exercise its rights and remedies under the Plan, the Bankruptcy Code, and applicable non-bankruptcy law, subject to any applicable requirement for relief from the automatic stay or further order of the Bankruptcy Court.<br><br>**I. Reservation of Rights.** Except for the allowance and treatment expressly provided under this Section, neither the Plan nor the Debtor's schedules shall constitute an admission concerning the validity, priority, extent, or enforceability of any lien asserted by Regions Bank or the allowance of any charge, fee, expense, or other amount. The Debtor reserves all rights to object to Regions' Claim or liens except to the extent resolved by confirmation of the Plan or another Final Order.<br><br>**J. Impairment.** Class 4 is Impaired under the Plan. |
| 5 | Impaired.<br><br>Entitled to Vote. | **A. Classification and Allowance.** Class 5 consists of the secured Claim of Ben Martin ("Martin"). Although Martin did not file a proof of claim, the Debtor scheduled Martin's aggregate Claim in the amount of $140,000.00. To the extent the Claim was scheduled as undisputed, noncontingent, and liquidated, it shall be deemed filed under section 1111(a) of the Bankruptcy Code.<br><br>Martin's Claim is secured by the Debtor's real property located at 29164 South Satsuma Road, Livingston, Louisiana 70754, together with all improvements, fixtures, rents, proceeds, and other interests subject to Martin's valid liens (collectively, the "Martin Collateral").<br><br>Based upon the agreed value of the Martin Collateral, Martin shall have:<br><br>1. an Allowed Secured Claim of $90,000.00; and<br><br>2. an Allowed General Unsecured Claim of $50,000.00.<br><br>The Allowed General Unsecured Claim shall receive the treatment provided to Class 6.<br><br>**B. Treatment of Allowed Secured Claim.** Beginning on the first Business Day of the first full calendar month following the Effective Date, the Debtor shall pay Martin's Allowed Secured Claim in one hundred twenty (120) consecutive monthly installments based upon:<br><br>1. a principal amount of $90,000.00;<br><br>2. interest at a fixed rate of 6.0% per annum; and<br><br>3. a 120-month amortization period.<br><br>The first one hundred nineteen (119) monthly installments shall be $999.18 each. The 120th and final installment shall equal all remaining principal |

and accrued interest, which is estimated to be $999.92 after accounting for payment rounding. Payments shall be applied first to accrued interest and then to principal. No balloon payment shall be due.

**C. Retention of Liens.** Until Martin's Allowed Secured Claim has been paid in full, Martin shall retain his valid, enforceable, and perfected liens against the Martin Collateral to the same extent and priority existing on the Petition Date. Martin's retained liens shall secure only his Allowed Secured Claim and shall not secure his Allowed General Unsecured Claim or any amount disallowed under the Plan or by order of the Bankruptcy Court.

**D. Possession and Use of Collateral.** The Debtor shall retain possession and use of the Martin Collateral. The vesting of the Martin Collateral in the Reorganized Debtor shall be subject to Martin's retained liens and the treatment provided under the Plan.

**E. Taxes, Insurance, and Maintenance.** Until Martin's Allowed Secured Claim has been paid in full, the Debtor shall:

1. maintain the Martin Collateral in reasonable condition, ordinary wear and tear excepted;

2. timely pay all postpetition ad valorem taxes and assessments attributable to the Martin Collateral before they become delinquent;

3. maintain property and casualty insurance covering the Martin Collateral in amounts consistent with the Debtor's prepetition obligations and ordinary business practices; and

4. identify Martin as mortgagee and loss payee under the applicable insurance policies to the extent of his interest.

Upon reasonable written request, the Debtor shall provide Martin with evidence of payment of applicable taxes and maintenance of required insurance.

**F. Prepayment.** The Debtor may prepay all or any portion of Martin's Allowed Secured Claim at any time without premium, penalty, or other charge. Any partial prepayment shall be applied first to accrued interest and then to principal and shall not postpone the due date of any subsequent monthly installment unless Martin agrees otherwise in writing.

**G. Satisfaction and Release of Liens.** Upon payment in full of Martin's Allowed Secured Claim, Martin's liens against the Martin Collateral shall be deemed fully satisfied and released. Martin shall promptly execute and deliver any cancellation, release, or other documents reasonably necessary to evidence the satisfaction and release of his liens in the applicable public records.

| | | |
|---|---|---|
| | | **H. Default and Remedies.** If the Debtor fails to make a payment required under this Section, fails to maintain required insurance, or fails to timely pay postpetition taxes or assessments attributable to the Martin Collateral, Martin shall provide the Debtor and Debtor's counsel with written notice identifying the alleged default. The Debtor shall have:<br><br>1. fifteen (15) days after receipt of the notice to cure a payment default; and<br><br>2. ten (10) days after receipt of the notice to cure an insurance or tax default.<br><br>If the Debtor fails to timely cure the default, Martin may exercise his rights and remedies under the Plan, the Bankruptcy Code, and applicable non-bankruptcy law, subject to any applicable requirement for relief from the automatic stay or further order of the Bankruptcy Court.<br><br>**I. Reservation of Rights.** Except for the allowance and treatment expressly provided under this Section, neither the Plan nor the Debtor's schedules shall constitute an admission concerning the validity, priority, extent, or enforceability of any lien asserted by Martin or the allowance of any charge, fee, expense, or other amount. The Debtor reserves all rights to object to Martin's Claim or liens except to the extent resolved by confirmation of the Plan or another Final Order.<br><br>**J. Impairment.** Class 5 is impaired under the Plan. |
| 6 | Impaired.<br><br>Entitled to Vote. | **A. Classification.** Class 6 consists of all Allowed General Unsecured Claims against the Debtor that are not entitled to priority under section 507(a) of the Bankruptcy Code and are not otherwise classified or treated under the Plan. Class 6 includes, without limitation:<br><br>1. Allowed Claims arising from the rejection of executory contracts or unexpired leases;<br><br>2. the unsecured deficiency portion of any undersecured Claim determined under section 506(a) of the Bankruptcy Code; and<br><br>3. any portion of the SBA's or Kapitus's Claim that is determined by Final Order to constitute an Allowed General Unsecured Claim.<br><br>The inclusion of a Claim in Class 6 does not constitute an admission that the Claim is Allowed. The Debtor and Reorganized Debtor reserve all rights to object to any Claim included or asserted in Class 6.<br><br>**B. Estimated Amount of Class 6 Claims.** If the SBA's and Kapitus's Claims are fully secured, the Debtor estimates that the aggregate amount of Class 6 Claims will be $237,424.12. If the SBA's and Kapitus's Claims are entirely unsecured, the Debtor estimates that the aggregate amount of Class 6 Claims will be $746,830.47. These estimates are provided for disclosure and feasibility purposes only and do not constitute allowance of |

| | | |
|---|---|---|
| | | any Claim.<br><br>**C. Class 6 Distribution Amount.** Holders of Allowed Class 6 Claims shall receive aggregate distributions having a present value, as of the Effective Date, of $237,424.12, calculated using a discount rate of 2.75% per annum and a sixty-month payment period.<br><br>To provide that present value, the Reorganized Debtor shall distribute approximately $4,239.87 per month to or for the benefit of holders of Allowed Class 6 Claims for sixty (60) consecutive months. The aggregate nominal distributions are estimated to be $254,392.49. The sixtieth and final distribution shall be adjusted as necessary to account for payment rounding and to ensure that the present value of the aggregate Class 6 distributions equals $237,424.12.<br><br>The 2.75% discount rate is used solely to calculate the present value of the deferred Class 6 distributions. It does not constitute allowance of postpetition interest on any Class 6 Claim.<br><br>**D. Commencement and Timing of Distributions.** The first Class 6 distribution shall be made on the first Business Day of the first full calendar month following the Effective Date. Subsequent distributions shall be made on the first Business Day of each succeeding calendar month until the Reorganized Debtor has made sixty (60) monthly distributions.<br><br>The Reorganized Debtor may prepay all or any portion of the remaining Class 6 Distribution Amount without premium or penalty, provided that the aggregate distributions retain a present value of not less than $237,424.12 as of the Effective Date.<br><br>**E. Pro Rata Allocation.** Each holder of an Allowed Class 6 Claim shall receive its Pro Rata share of each Class 6 distribution. A holder's Pro Rata share shall equal the ratio that its Allowed Class 6 Claim bears to the aggregate amount of all Allowed and Disputed Class 6 Claims as of the applicable distribution record date.<br><br>No holder shall receive more than the amount of its Allowed Class 6 Claim. If all Allowed Class 6 Claims are paid in full before completion of the sixty-month payment period, the Reorganized Debtor shall have no obligation to make additional Class 6 distributions.<br><br>**F. Disputed Class 6 Claims Reserve.** Before making each Class 6 distribution, the Reorganized Debtor or other Disbursing Agent shall calculate the Pro Rata share attributable to each Disputed Class 6 Claim and deposit that amount into a segregated reserve for Disputed Class 6 Claims (the "Class 6 Reserve").<br><br>No distribution shall be made from the Class 6 Reserve on account of a Disputed Class 6 Claim unless and until that Claim becomes Allowed by Final Order or an agreement approved by the Bankruptcy Court. |

| | | |
|---|---|---|
| | | If a Disputed Class 6 Claim becomes Allowed:<br><br>1. the holder shall receive the reserved distributions attributable to the Allowed amount of its Claim;<br><br>2. the holder shall thereafter participate in future Class 6 distributions on a Pro Rata basis; and<br><br>3. all distributions from the Class 6 Reserve shall be credited against the holder's Allowed Class 6 Claim.<br><br>If a Disputed Class 6 Claim is disallowed in whole or in part, the reserved funds attributable to the disallowed portion shall be used to fund subsequent distributions to holders of Allowed Class 6 Claims. After all obligations to holders of Allowed Class 6 Claims have been satisfied, any remaining funds shall revest in the Reorganized Debtor.<br><br>**G. Treatment of SBA and Kapitus if Unsecured.** If any portion of the SBA's or Kapitus's Claim is determined by Final Order to be an Allowed General Unsecured Claim:<br><br>1. the Allowed unsecured portion shall be included in Class 6;<br><br>2. the holder shall participate in Class 6 distributions on the same Pro Rata basis as all other holders of Allowed Class 6 Claims;<br><br>3. funds transferred from the SBA Reserve or Kapitus Reserve to the account used to fund Class 6 distributions shall constitute a source of funding for the Class 6 Distribution Amount and shall not increase the aggregate Class 6 Distribution Amount unless otherwise ordered by the Bankruptcy Court;<br><br>4. neither the SBA nor Kapitus shall have an exclusive right to funds transferred from its respective disputed claims reserve on account of an unsecured Claim; and<br><br>5. all amounts previously distributed or credited on account of the Claim shall be applied to prevent double recovery.<br><br>**H. Reserved**.<br><br>**I. Unclaimed Distributions.** Any distribution that remains unclaimed for ninety (90) days after the date of issuance shall revest in the Reorganized Debtor. The Claim of the holder of the unclaimed distribution shall be deemed satisfied to the extent of that distribution, and the holder shall have no further right to the unclaimed funds.<br><br>**J. No Postpetition Interest, Penalties, or Additional Charges.** Except as otherwise required by a Final Order, holders of Class 6 Claims shall not receive postpetition interest, default interest, penalties, late charges, collection costs, attorneys' fees, or other amounts accruing after the |

| | | |
|---|---|---|
| | | Petition Date.<br><br>**K. No Double Recovery.** No holder of an Allowed Class 6 Claim may receive aggregate distributions under the Plan exceeding the amount of its Allowed Claim. Any payment, distribution, credit, setoff, or recovery received on account of a Class 6 Claim from another source shall reduce the amount payable under this Section dollar-for-dollar.<br><br>**L. Impairment.** Class 6 is impaired under the Plan. |
| 7 | Unimpaired.<br><br>Deemed to have accepted the Plan | Class 7 consists of Equity Security Holders who shall retain their membership interests in and of the Debtor.<br><br>Holders of Allowed Interests are Unimpaired, and thus, are deemed to accept this Plan. |

## ARTICLE 5
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

### 5.1 Disputed Claims

The deadline for non-Governmental Units to file a Proof of Claim under Bankruptcy Rule 3003 was **TUESDAY, JULY 28, 2026** and the deadline for Governmental Units to file a proof of claim is **MONDAY, NOVEMBER 16, 2026**.

The Debtor has a deadline of thirty (30) days after the filing of the notice of the Effective Date to file any objection deemed necessary to asserted claims.

As discussed above, the Disputed Claim Reserve shall be created with respect to the Claim of the SBA and Kapitus.

Except as expressly provided in the Plan or a Final Order, neither the classification nor treatment of the SBA's or Kapitus' Claim constitutes an admission by the Debtor concerning the validity, amount, priority, extent, enforceability, or perfection of any asserted Claim or lien. The Debtor expressly reserves the right to object to either Claim, seek valuation under section 506(a) of the Bankruptcy Code, avoid or preserve any lien under applicable provisions of the Bankruptcy Code, and recover any payment or transfer to the extent permitted by applicable law.

### 5.2 Distributions

No distribution will be made when no Proof of Claim has been filed or timely filed and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated. To the extent that a Claim is filed after **TUESDAY, JULY 28, 2026** for non-Governmental Units and **MONDAY, NOVEMBER 16, 2026** for Governmental Units, and after the filing of this Plan, the Claim is deemed disallowed.

To the extent that a Claim is subject to a pending objection, the Debtor will escrow any distribution which will either be tendered based on the Allowed amount after the entry of a Final

Order allowing the Claim or release the funds for future distributions upon the entry of a Final Order disallowing the Claim.

If any distribution is returned as undeliverable or remains unclaimed after thirty (30) days of the Distribution Date, no further distributions to the applicable holder shall be made unless and until the distribution agent is notified in writing of such holder's then-current address, and after the distribution agent makes a reasonable attempt to contact the claim holder. Such holders of returned and/or unclaimed distributions shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Any funds that are returned to the Debtor or not timely presented for payment within thirty (30) days of the issue date, shall be used by the Debtor to make an additional distribution pursuant to the terms of the Plan. Ninety (90) days after the final distribution, the Debtor shall stop payment on any check remaining unpaid and any remaining property of the Estate shall be paid into the Court and disposed of under chapter 129 of title 28.

Whenever a distribution hereunder is required to be made on a day other than a Business Day, such distribution shall be made on the first Business Day immediately following, without interest.

Any other provision of this Plan to the contrary notwithstanding, no payments of fractions will be made. Whenever a payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding off of such fraction to the nearest whole cent (rounding down in the case of .5).

If a Plan distribution amount is calculated as less than $15.00 for a holder of an Allowed Claim, the funds will be reserved, and once an accumulated amount is $15.00 or more, such distribution will be made to the holder of such Allowed Claim. For the final distribution, any amount shall be distributed, even if it is less than $15.00.

5.3 **Distribution Agent**

Distributions to holders of Allowed Claims provided for in this Plan will be made by Reorganized Debtor. Even if the Plan is confirmed under section 1191(b) of the Bankruptcy Code, Reorganized Debtor, not the Subchapter V Trustee, shall make all payments to holders of Allowed Claims under the Plan.

Notwithstanding section 1191(c), subject to his consent and approval by the Bankruptcy Court, the Subchapter V Trustee shall serve as the reserve agent for the Disputed Claim Reserve (the "Reserve Agent"), notwithstanding substantial consummation of the Plan or termination of her other duties under § 1183(c)(1). The Reserve Agent shall hold the Disputed Claim Reserve in a segregated, interest-bearing account at an institution insured by the Federal Deposit Insurance Corporation and shall not commingle those funds with his own funds or other estate funds.

The Disputed Claim Reserve, including all interest earned thereon, shall remain subject to the exclusive terms of the Plan and shall not be used, transferred, pledged, or distributed except as expressly provided in the Plan or authorized by Final Order. Bank charges and other reasonable expenses directly attributable to maintaining the account may be deducted from the Disputed Claim Reserve. The Reserve Agent shall provide the Debtor, the SBA, Kapitus, and the U.S.

Trustee with a quarterly statement reflecting all deposits, withdrawals, interest, fees, and the account balance.

Upon entry of a Final Order resolving the Disputed Portion, the Reserve Agent shall distribute the Disputed Claim Reserve as follows: (a) first, to the SBA and Kapitus, the amount necessary to satisfy the accumulated Plan payments attributable to the portion of the Disputed portion of their Claim that are Allowed; and (b) second, the remaining balance, including accrued interest, to Reorganized. Thereafter, the Debtor's remaining monthly payments shall be adjusted in accordance with the treatment prescribed for Classes 1 and 2.

The Reserve Agent shall receive reasonable compensation and reimbursement of actual and necessary expenses incurred in administering the Disputed Claim Reserve, subject to approval by the Bankruptcy Court. Such compensation and expenses shall be paid by the Debtor as an administrative expense and shall not reduce the amounts otherwise distributable from the Disputed Claim Reserve, except for bank charges and account-maintenance expenses.

If the Subchapter V Trustee does not consent to serve, resigns, becomes unable to serve, or is removed as Reserve Agent, the Debtor may designate a successor reserve agent, subject to Bankruptcy Court approval. The outgoing Reserve Agent shall promptly transfer the Disputed Claim Reserve and all related records to the approved successor.

The Reserve Agent shall have no responsibility to determine the allowance or amount of the disputed portion any Claim and may rely conclusively upon the Plan, the Confirmation Order, and any Final Order resolving such Claims. The Reserve Agent shall not be liable for any act or omission undertaken in good faith in administering the Disputed Claim Reserve, except for gross negligence, willful misconduct, or fraud.

5.4 **Settlement of Dispute**

The Debtor will have the power and authority to settle and compromise a disputed claim subject to Bankruptcy Court approval and compliance with Bankruptcy Rule 9019.

5.5 **Retained Causes of Action**

Unless any Retained Causes of Action against any Person or Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or by a Final Order, in accordance with § 1123(b) of the Bankruptcy Code, the Debtor shall retain, for the benefit of the Estate, at the Debtor's discretion, to enforce all rights to commence and pursue any and all Retained Causes of Action, whether arising before or after the Petition Date.

**NO ENTITY MAY RELY ON THE ABSENCE OF A SPECIFIC REFERENCE IN THE PLAN TO ANY CAUSE OF ACTION AGAINST THEM AS ANY INDICATION THAT THE DEBTOR WILL NOT PURSUE ANY AND ALL AVAILABLE CAUSES OF ACTION AGAINST THEM. THE DEBTOR EXPRESSLY RESERVES ALL RIGHTS TO PROSECUTE ANY AND ALL CAUSES OF ACTION AGAINST ANY ENTITY, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN**.

Unless any Retained Causes of Action against any Person or Entity are expressly waived,

relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Debtor expressly reserves all Retained Causes of Action for later adjudication, and therefore, no preclusion doctrine, including, but not limited to, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date.

The Debtor reserves and shall retain Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Case or pursuant to the Plan. In accordance with §§ 1123(b)(3) and 1141(b) of the Bankruptcy Code, any Retained Causes of Action that the Debtor may hold against any Entity shall vest in the Debtor. The Debtor shall retain and may exclusively enforce all such Retained Causes of Action. Subject to Bankruptcy Court approval, the Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action, or to decline to do any of the foregoing.

## ARTICLE 6
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

To the extent that the Debtor is a lessee, and except for executory contracts and unexpired leases that have been assumed or rejected by order of the Court before the Effective Date, or that are the subject of a pending motion to assume or reject, the Debtor will conclusively deem to have accepted all executory contracts and unexpired leases as of the effective date, which includes:

A. None.

## ARTICLE 7
## MEANS FOR IMPLEMENTATION OF THE PLAN

A. Funding Through Projected Disposable Income

The Reorganized Debtor shall fund the Plan by applying its projected disposable income from business operations during the five-year period beginning on the date the first payment is due under the Plan (the "Commitment Period"). During the Commitment Period, the Reorganized Debtor shall devote all projected disposable income, as defined by section 1191(d) of the Bankruptcy Code, to making the distributions required under the Plan.

Frank Credidio shall continue serving as the Reorganized Debtor's manager. As compensation for his services, the Reorganized Debtor shall resume making the monthly payments due on Mr. Credidio's home mortgage, consistent with its prepetition compensation arrangement. These payments shall constitute ordinary-course compensation for services actually rendered, rather than distributions on account of Mr. Credidio's ownership interest, and shall be treated as a reasonably necessary operating expense when calculating the Reorganized Debtor's disposable income. The Reorganized Debtor shall make all Plan payments from the revenues generated by its operations in accordance with the payment schedule attached to the Plan.

**B. Retention and Use of Litigation Proceeds**

On the Effective Date, all Retained Causes of Action, including the claims and Causes of Action identified in this Plan, shall be retained by and vest in the Reorganized Debtor pursuant to sections 1123(b)(3)(B) and 1141(b) of the Bankruptcy Code. The Reorganized Debtor shall have the exclusive right, authority, and standing to investigate, commence, prosecute, settle, compromise, dismiss, abandon, release, or otherwise dispose of each Retained Cause of Action and to collect and enforce any resulting judgment or settlement, without further order of the Bankruptcy Court except as otherwise required by this Plan, the Confirmation Order, or applicable law.

Except as expressly provided in the Default Remedies section of this Plan, the Reorganized Debtor shall retain all proceeds obtained from the Retained Causes of Action. Such proceeds are not a source of funding for the distributions required under the Plan, and the Reorganized Debtor shall have no obligation to apply such proceeds toward payment of any Allowed Claim. No Holder of an Allowed Claim shall acquire any ownership interest, lien, security interest, or other right in a Retained Cause of Action or its proceeds solely by reason of the Plan.

For purposes of the Plan, "Net Litigation Proceeds" means all cash proceeds actually received by the Reorganized Debtor from a judgment, settlement, or other resolution of a Retained Cause of Action, after payment or reservation for: (a) reasonable attorneys' fees, contingency fees, expert-witness fees, court costs, and other expenses incurred in investigating, prosecuting, settling, or collecting the Retained Cause of Action; (b) taxes attributable to the proceeds; and (c) amounts required to be paid to any Person possessing a valid and enforceable lien upon, or other superior right to, such proceeds.

## ARTICLE 8
## GENERAL PROVISIONS

### 8.1 **Definitions/Rules**

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

### 8.2 **Effective Date**

The "Effective Date" of this Plan shall be the first (1st) Business Day following the date on which all of the following conditions have been satisfied or waived by the Debtor:

A. ***Entry of Confirmation Order***. The Bankruptcy Court shall have entered an order confirming this Plan pursuant to section 1191(a) or 1191(b) of the Bankruptcy Code, and such order shall be a Final Order or shall not have been stayed as of the proposed Effective Date.

The Debtor shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court, which shall include a representation that the conditions to the Effective Date have been satisfied or waived.

Except as provided in this Plan or the order confirming this Plan, all of the property of the Estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the

Effective Date free and clear of any claim or interest of any creditor provided for by this Plan, if the Plan is confirmed under § 1191(a).

8.3 **Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

8.4 **Binding Effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors and assigns of such entity.

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of the Estate and each party-in-interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

8.5 **Captions**.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.6 **Controlling Effect**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Louisiana govern this Plan, and any agreements, documents, and instruments executed with this Plan, except as otherwise provided in the Plan and/or the agreement.

8.7 **Jurisdiction**

Notwithstanding the entry of an order confirming this Plan, the bankruptcy court shall retain and have exclusive jurisdiction after the effective date over any matter arising under the Bankruptcy Code.

8.8 **Remedies Upon Plan Default**

Under § 1191(c)(3)(B) of the Bankruptcy Code, if the plan is confirmed on a non-consensual basis, the Debtor is required to "provide appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made."

Except as otherwise provided herein, the following provisions shall apply if, and only if, this Plan is confirmed pursuant to § 1191(b) of the Bankruptcy Code.

A. As to secured creditors, if the Debtor defaults on its monthly payments for a period of more than twenty (20) calendar days, any creditor who has not received payment

shall give written notice to the Debtor, Debtor's counsel, and the Subchapter V Trustee of the default. Upon receipt of the notice of default, the Debtor shall have fifteen (15) calendar days to cure the default by making the payment. If the Debtor fails to cure the default within fifteen (15) calendar days of receiving the notice of default, the creditor may file an *ex parte* motion for relief from the automatic stay.

B. For payments to holders of Allowed Unsecured Claims, including Professional Fee Claims, the Debtor will be entitled to a 20-day grace period after the transmission of the Default Notice ("Grace Period") to cure the Default. If the Debtor has not cured the Default within the Grace Period, the creditor may file an *ex parte* motion for relief from the automatic stay to pursue any third-party claim against any of the Debtor's Insiders, Affiliates, or guarantors and the temporary injunction described in Article 9, below, shall be lifted with respect to such creditor.

***THE BANKRUPTCY COURT SHALL SPECIFICALLY RETAIN JURISDICTION TO ENFORCE THIS DEFAULT PROVISION.***

### 8.9 Quarterly Operating Reports

Until the Debtor completes all payments required under the Plan, the Debtor shall file a quarterly operating report with the Bankruptcy Court no later than thirty days after the end of each calendar quarter. Each report shall include, for the applicable quarter: (a) gross revenues and expenses; (b) ordinary and necessary operating expenses; (c) all payments made under the Plan; (d) deposits into and distributions from the Disputed Claim Reserve; I beginning and ending cash balances; and (f) a calculation of the Debtor's Projected Disposable Income.

The obligation to file quarterly operating reports shall continue notwithstanding substantial consummation or entry of a final decree and shall terminate only upon entry of an order granting the Debtor a discharge, dismissal or conversion of the Chapter 11 Case, or further order of the Bankruptcy Court.

## ARTICLE 9
## DISCHARGE

If the Debtor's Plan is confirmed under § 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6) of the Bankruptcy Code.

If the Debtor's Plan is confirmed under § 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code, and property of the Estate, including, property under § 1186(a) of the Bankruptcy Code, shall not vest in the Debtor until the case is dismissed or a discharge is entered. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first three (3) years of the plan, or as otherwise provided in § 1192 of the

Bankruptcy Code; or (ii) excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Consistent with and to the fullest extent permitted under *In re Eng'g Recruiting Experts*, 2025 Bankr. LEXIS 2169 (Bankr. M.D. Fla. Sep. 2, 2025) (Burgess, J.), and *In re Miracle Rest. Grp., LLC*, 2025 Bankr. LEXIS 1188 (Bankr. E.D. La. May 13, 2025) (Grabill, J.):

> Notwithstanding anything contained herein to the contrary, neither the guarantors, Insiders, nor the Affiliates of the Debtor shall be discharged and released from liability, if any, for Claims and debts arising under or in connection with the Debtor or this Subchapter V Case and/or otherwise addressed and/or treated in this Plan. However, absent further Court order upon notice and hearing, the exclusive remedy for payment of any Claim or debt addressed in this Plan, so long as the Plan is not in default, shall be the Plan and all parties classified in and under Article 4, herein, are enjoined from taking any action inconsistent herewith, including, but not limited to, any action to prosecute or collect any debt or Claim against any guarantor, Insider, or Affiliate; *provided however*, that all creditors shall retain the right to pursue any third-party guarantor for any debts not addressed in this Plan and the discharge under 11 U.S.C. § 1192 shall not apply to any third-party guarantor. To the extent necessary, any applicable statute of limitations against collection from any third party is specifically tolled from the period from the Petition Date until the date upon which the Debtor fails to cure any written notice of default as set forth in the Plan and/or any applicable loan documents.

## ARTICLE 10
## OTHER PROVISIONS

### 10.1 Subchapter V Trustee

If this Plan is confirmed as consensual under § 1191(a) of the Bankruptcy Code, § 1194 of the Bankruptcy Code does not contemplate that the Subchapter V Trustee will make the Plan distributions. Under a consensual Plan, the Subchapter V Trustee's services terminate upon substantial consummation.

If this Plan is confirmed as non-consensual under § 1191(b) of the Bankruptcy Code, § 1194(b) of the Bankruptcy Code provides that the Subchapter V Trustee shall make payments to creditors under the Plan. However, as otherwise provided in this Plan, and if approved by this Court in the order confirming this Plan, the Debtor shall make the payments to the creditors and comply with the necessary reporting requirements.

### 10.2 Substantial Consummation

Substantial consummation occurs upon the transfer of all property proposed by the plan to be transferred (§ 1101(2)(A)), assumption by the debtor or successor of the business or of the management of all or substantially all of the property dealt with by the Plan (§ 1101(2)(B)), and commencement of distributions under the Plan (§ 1101(2)(C)). No later than fourteen (14) days after the Plan is substantially consummated, the Debtor shall file notice of such substantial

consummation (§ 1183(c)(2)).

10.3 **Consensual Confirmation**

If all applicable requirements in § 1129(a) of the Bankruptcy Code are met except for the projected disposable income rule of § 1129(a)(15) of the Bankruptcy Code – which applies to individual debtor—§ 1191(a) of the Bankruptcy Code requires the Court to confirm this Plan.

10.4 **Non-consensual Confirmation**

Under § 1191(b) of the Bankruptcy Code, confirmation is permitted even if the requirements of § 1129 (8), (10) and (15) of the Bankruptcy Code are not met. Thus, cramdown does not require that (1) all impaired classes accept the plan or (2) at least one impaired class accepts the plan. Instead § 1191(b) of the Bankruptcy Code cramdown rules (1) permit cramdown confirmation even if all impaired classes do not accept the plan. Thus, if all other confirmation standards are met, the Court must confirm the Plan, on the request of the Debtor, if, with respect to each impaired class that has not accepted it, the Plan (1) does not discriminate unfairly; and (2) is fair and equitable.

10.5 **Disposable Income**

A plan must provide that all projected disposable income of the Debtor to be received in the three-year period or longer period as fixed by the Court after the first payment under the Plan is due. Alternatively, the plan may provide that the value of property to be distributed under the plan within the three-year period or longer period as fixed by the Court that is no less than the projected disposable income of the debtor.

Under § 1191(d) of the Bankruptcy Code, projected disposable income is defined as income that is received by the debtor that is not reasonably necessary to be expended for these specific purposes: (i) the maintenance or support of the debtor or a dependent of the debtor; or (ii) a domestic support obligation that first becomes payable after the date of the filing of the petition, or (iii) payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor. The Debtor has provided projected financial information as **Exhibit B**.

# # #

**ASCENSION TOWING AND RECOVERY, LLC**

**/s/ Frank Credidio**
By: Frank Credidio
Its: Member and Manager

Submitted by:

**STERNBERG, NACCARI & WHITE, LLC**

By: **/s/ Ryan J. Richmond**

Ryan J. Richmond (La. Bar No. 30688)
450 Laurel Street, Suite 1450
Baton Rouge, LA 70801
Tel.: (225) 412-3667
Fax: (225) 286-3046
Email: ryan@snw.law

*Attorneys for Ascension Towing and Recovery, LLC*

# <u>EXHIBIT A</u>

## Liquidation Analysis

(To be Supplied.)

# # #

# EXHIBIT B

## Plan Projections

# Ascension Towing - Five-Year Cash Flow Projection

| | |
|---|---|
| **Model Date** | 2026-08-13 |
| **Projection Period** | December 2026-November 2031 |
| **Beginning Cash** | $164,000.00 |
| **Average Monthly Receipts** | $143,250.00 |
| **Average Monthly Operating Disbursemen** | $120,333.33 |
| **Ending Cash after Five Years** | $248,470.49 |
| **Five-Year Nominal Other GUC Payments** | $254,392.49 |

## Annual Projection

| Plan Year | Beginning Cash | Receipts | Operating Disbursements | Secured & Professional Payments | Priority Tax Payments | Disputed Claims Reserve | Other GUC Present-Value Payments | Ending Cash | Debt Service Coverage |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $164,000.00 | $1,719,000.00 | $1,444,000.00 | $77,276.62 | $25,141.12 | $116,323.77 | $50,878.50 | $169,379.99 | 1.26x |
| 2 | $169,379.99 | $1,719,000.00 | $1,444,000.00 | $77,276.62 | $25,141.12 | $116,323.77 | $50,878.50 | $174,759.97 | 1.26x |
| 3 | $174,759.97 | $1,719,000.00 | $1,444,000.00 | $62,276.62 | $25,141.12 | $116,323.77 | $50,878.50 | $195,139.96 | 1.35x |
| 4 | $195,139.96 | $1,719,000.00 | $1,444,000.00 | $62,276.62 | $25,141.12 | $116,323.77 | $50,878.50 | $215,519.94 | 1.35x |
| 5 | $215,519.94 | $1,719,000.00 | $1,444,000.00 | $62,276.62 | $12,570.56 | $116,323.77 | $50,878.50 | $248,470.49 | 1.44x |
| **Five-Year Total** | **-** | **$8,595,000.00** | **$7,220,000.00** | **$341,383.11** | **$113,135.05** | **$581,618.87** | **$254,392.49** | **$248,470.49** | |

SBA and Kapitus receive monthly deposits into a disputed claims reserve based on full payment over 60 months at 3.75% and 6.0%, respectively, pending a Final Order determining claim classification.
Revenue is projected at 90% of the six-month average. The $14,000 Notes Payable line has been removed because it is presumed redundant with specific plan payments.
Other general unsecured claims receive level monthly payments with a present value of $237,424.12 at a 2.75% annual discount rate; remaining cash is retained by the Reorganized Debtor.

## General Unsecured Present-Value Analysis

| Target Present Value | Discount Rate | Payment Months | Monthly Payment | Nominal Payments | Calculated Present Value |
|---|---|---|---|---|---|
| $237,424.12 | 2.75% | 60 | $4,239.87 | $254,392.49 | $237,424.12 |

# Model Assumptions and Plan Payments

## General Assumptions

| Assumption | Value | Notes |
|---|---|---|
| Projection start date | Dec 2026 | Editable; follows the six-month June-November source projection |
| Beginning cash | $164,000.00 | Projected November ending cash from source projection |
| Projection months | 60 | Five-year commitment period |
| Revenue realization factor | 90.0% | Projects sales and other receipts at 90% of the six-month averages |
| General unsecured claims - fully secured sc | $237,424.12 | Excludes the SBA and Kapitus claims |
| General unsecured claims - fully unsecured | $746,830.47 | Includes the SBA and Kapitus claims |

## Monthly Operating Assumptions - Six-Month Averages

| Line Item | Monthly Average | Source |
|---|---|---|
| Projected Sales | $118,500.00 | Source Data average reduced by revenue realization factor |
| Projected Other Receipts | $24,750.00 | Source Data average reduced by revenue realization factor |
| Operating | $85,833.33 | Source Data average |
| General and Administrative | $22,000.00 | Source Data average |
| Taxes | - | Source Data average |
| Fuel | $12,500.00 | Source Data average |

## Plan Payment Assumptions

| Claim | Principal / Net Claim | Rate | Amortization / Payment Months | Monthly Payment |
|---|---|---|---|---|
| Stearns Bank | $81,806.67 | 6.00% | 60 | $1,581.55 |
| Regions Bank | $235,000.00 | 6.00% | 120 | $2,608.98 |
| Ben Martin | $90,000.00 | 6.00% | 120 | $999.18 |
| Professional Fees | $30,000.00 | 0.00% | 24 | $1,250.00 |
| Louisiana Department of Revenue | $2,805.69 | 10.50% | 54 | $65.42 |
| Internal Revenue Service | $93,785.94 | 7.00% | 54 | $2,029.68 |
| SBA Disputed Claims Reserve | $150,263.96 | 3.75% | 60 | $2,750.42 |
| Kapitus Disputed Claims Reserve | $359,142.39 | 6.00% | 60 | $6,943.23 |
| Other General Unsecured Claims | $237,424.12 | 2.75% | 60 | $4,239.87 |

SBA and Kapitus payments are deposited into a disputed claims reserve pending a Final Order determining the secured and unsecured portions of their claims.
Other general unsecured claims receive level monthly payments having a present value of $237,424.12 using a 2.75% annual discount rate over 60 months.
Priority tax claims are amortized over the 54 projection months remaining through May 2031, which is five years after the May 19, 2026 petition date.

# Ascension Towing - Six-Month Source Data

| Line Item | June | July | August | September | October | November | Six-Month Average |
|---|---|---|---|---|---|---|---|
| Beginning Cash | $15,000 | $43,000 | $69,000 | $97,000 | $121,000 | $143,000 | $81,333 |
| Sales | $130,000 | $140,000 | $135,000 | $130,000 | $130,000 | $125,000 | $131,667 |
| Other Receipts | $35,000 | $35,000 | $25,000 | $25,000 | $25,000 | $20,000 | $27,500 |
| **Total Receipts** | **$165,000** | **$175,000** | **$160,000** | **$155,000** | **$155,000** | **$145,000** | **$159,167** |
| Operating | $85,000 | $95,000 | $85,000 | $85,000 | $85,000 | $80,000 | $85,833 |
| General and Administrative | $25,000 | $25,000 | $20,000 | $20,000 | $22,000 | $20,000 | $22,000 |
| Taxes | - | - | - | - | - | - | - |
| Notes Payable | $14,000 | $14,000 | $14,000 | $14,000 | $14,000 | $14,000 | $14,000 |
| Fuel | $13,000 | $15,000 | $13,000 | $12,000 | $12,000 | $10,000 | $12,500 |
| **Total Disbursements** | **$137,000** | **$149,000** | **$132,000** | **$131,000** | **$133,000** | **$124,000** | **$134,333** |
| **Ending Cash** | **$43,000** | **$69,000** | **$97,000** | **$121,000** | **$143,000** | **$164,000** | **$106,167** |

Source note: Cash Flow Projections.pdf, handwritten six-month projection for June-November. October operating expense is read as $85,000 because it reconciles
All source amounts are monthly dollars. Taxes were blank and are modeled as zero, consistent with the source form.

## Five-Year Monthly Cash Flow Projection

| Month | Period | Beginning Cash | Sales | Other Receipts | Total Receipts | Operating | G&A | Taxes | Fuel | Operating Disbursements | Stearns | Regions | Ben Martin | Professional Fees | LDR Priority Tax | IRS Priority Tax | SBA Disputed Reserve | Kapitus Disputed Reserve | Total Plan/Tax Payments | Other GUC Present-Value Payment | Ending Cash | Cash Roll-Forward Check |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Dec 2026 | $164,000.00 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $164,448.33 | - |
| 2 | Jan 2027 | $164,448.33 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $164,896.66 | - |
| 3 | Feb 2027 | $164,896.66 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $165,345.00 | - |
| 4 | Mar 2027 | $165,345.00 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $165,793.33 | - |
| 5 | Apr 2027 | $165,793.33 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $166,241.66 | - |
| 6 | May 2027 | $166,241.66 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $166,689.99 | - |
| 7 | Jun 2027 | $166,689.99 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $167,138.32 | - |
| 8 | Jul 2027 | $167,138.32 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $167,586.66 | - |
| 9 | Aug 2027 | $167,586.66 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $168,034.99 | - |
| 10 | Sep 2027 | $168,034.99 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $168,483.32 | - |
| 11 | Oct 2027 | $168,483.32 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $168,931.65 | - |
| 12 | Nov 2027 | $168,931.65 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $169,379.99 | - |
| 13 | Dec 2027 | $169,379.99 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $169,828.32 | - |
| 14 | Jan 2028 | $169,828.32 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $170,276.65 | - |
| 15 | Feb 2028 | $170,276.65 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $170,724.98 | - |
| 16 | Mar 2028 | $170,724.98 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $171,173.31 | - |
| 17 | Apr 2028 | $171,173.31 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $171,621.65 | - |
| 18 | May 2028 | $171,621.65 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $172,069.98 | - |
| 19 | Jun 2028 | $172,069.98 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $172,518.31 | - |
| 20 | Jul 2028 | $172,518.31 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $172,966.64 | - |
| 21 | Aug 2028 | $172,966.64 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $173,414.97 | - |
| 22 | Sep 2028 | $173,414.97 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $173,863.31 | - |
| 23 | Oct 2028 | $173,863.31 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $174,311.64 | - |
| 24 | Nov 2028 | $174,311.64 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | $1,250.00 | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $18,228.46 | $4,239.87 | $174,759.97 | - |
| 25 | Dec 2028 | $174,759.97 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $176,458.30 | - |
| 26 | Jan 2029 | $176,458.30 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $178,156.63 | - |
| 27 | Feb 2029 | $178,156.63 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $179,854.97 | - |
| 28 | Mar 2029 | $179,854.97 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $181,553.30 | - |
| 29 | Apr 2029 | $181,553.30 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $183,251.63 | - |
| 30 | May 2029 | $183,251.63 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $184,949.96 | - |
| 31 | Jun 2029 | $184,949.96 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $186,648.29 | - |
| 32 | Jul 2029 | $186,648.29 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $188,346.63 | - |
| 33 | Aug 2029 | $188,346.63 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $190,044.96 | - |
| 34 | Sep 2029 | $190,044.96 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $191,743.29 | - |
| 35 | Oct 2029 | $191,743.29 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $193,441.62 | - |
| 36 | Nov 2029 | $193,441.62 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $195,139.96 | - |
| 37 | Dec 2029 | $195,139.96 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $196,838.29 | - |
| 38 | Jan 2030 | $196,838.29 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $198,536.62 | - |
| 39 | Feb 2030 | $198,536.62 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $200,234.95 | - |
| 40 | Mar 2030 | $200,234.95 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $201,933.28 | - |
| 41 | Apr 2030 | $201,933.28 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $203,631.62 | - |
| 42 | May 2030 | $203,631.62 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $205,329.95 | - |
| 43 | Jun 2030 | $205,329.95 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $207,028.28 | - |
| 44 | Jul 2030 | $207,028.28 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $208,726.61 | - |
| 45 | Aug 2030 | $208,726.61 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $210,424.94 | - |
| 46 | Sep 2030 | $210,424.94 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $212,123.28 | - |
| 47 | Oct 2030 | $212,123.28 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $213,821.61 | - |
| 48 | Nov 2030 | $213,821.61 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $215,519.94 | - |
| 49 | Dec 2030 | $215,519.94 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $217,218.27 | - |
| 50 | Jan 2031 | $217,218.27 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $218,916.60 | - |
| 51 | Feb 2031 | $218,916.60 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $220,614.94 | - |
| 52 | Mar 2031 | $220,614.94 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $222,313.27 | - |
| 53 | Apr 2031 | $222,313.27 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $224,011.60 | - |
| 54 | May 2031 | $224,011.60 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | $65.42 | $2,029.68 | $2,750.42 | $6,943.23 | $16,978.46 | $4,239.87 | $225,709.93 | - |
| 55 | Jun 2031 | $225,709.93 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | - | - | $2,750.42 | $6,943.23 | $14,883.37 | $4,239.87 | $229,503.36 | - |
| 56 | Jul 2031 | $229,503.36 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | - | - | $2,750.42 | $6,943.23 | $14,883.37 | $4,239.87 | $233,296.78 | - |
| 57 | Aug 2031 | $233,296.78 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | - | - | $2,750.42 | $6,943.23 | $14,883.37 | $4,239.87 | $237,090.21 | - |
| 58 | Sep 2031 | $237,090.21 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | - | - | $2,750.42 | $6,943.23 | $14,883.37 | $4,239.87 | $240,883.63 | - |
| 59 | Oct 2031 | $240,883.63 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | - | - | $2,750.42 | $6,943.23 | $14,883.37 | $4,239.87 | $244,677.06 | - |
| 60 | Nov 2031 | $244,677.06 | $118,500.00 | $24,750.00 | $143,250.00 | $85,833.33 | $22,000.00 | - | $12,500.00 | $120,333.33 | $1,581.55 | $2,608.98 | $999.18 | - | - | - | $2,750.42 | $6,943.23 | $14,883.37 | $4,239.87 | $248,470.49 | - |

## Five-Year Annual Cash Flow Summary

| Plan Year | Beginning Cash | Receipts | Operating Disbursements | Secured & Professional Payments | Priority Tax Payments | Disputed Claims Reserve | Other GUC Present-Value Payments | Ending Cash | Debt Service Coverage |
|---|---|---|---|---|---|---|---|---|---|
| 1 | $164,000.00 | $1,719,000.00 | $1,444,000.00 | $77,276.62 | $25,141.12 | $116,323.77 | $50,878.50 | $169,379.99 | 1.26x |
| 2 | $169,379.99 | $1,719,000.00 | $1,444,000.00 | $77,276.62 | $25,141.12 | $116,323.77 | $50,878.50 | $174,759.97 | 1.26x |
| 3 | $174,759.97 | $1,719,000.00 | $1,444,000.00 | $62,276.62 | $25,141.12 | $116,323.77 | $50,878.50 | $195,139.96 | 1.35x |
| 4 | $195,139.96 | $1,719,000.00 | $1,444,000.00 | $62,276.62 | $25,141.12 | $116,323.77 | $50,878.50 | $215,519.94 | 1.35x |
| 5 | $215,519.94 | $1,719,000.00 | $1,444,000.00 | $62,276.62 | $12,570.56 | $116,323.77 | $50,878.50 | $248,470.49 | 1.44x |
| **Five-Year Total** | | **$8,595,000.00** | **$7,220,000.00** | **$341,383.11** | **$113,135.05** | **$581,618.87** | **$254,392.49** | **$248,470.49** | |

## Model Checks

| Check | Actual | Expected | Difference | Status | Notes |
|---|---|---|---|---|---|
| Source receipts reconcile | $955,000.00 | $955,000.00 | - | OK | Sales plus other receipts equals stated total receipts |
| Source disbursements reconcile | $806,000.00 | $806,000.00 | - | OK | Expense components equal stated total disbursements |
| Cash roll-forward | - | - | - | OK | Maximum monthly difference should be zero |
| SBA reserve payment populated | 1 | 1 | 0 | OK | SBA claim paid over 60 months at 3.75% |
| Kapitus reserve payment populated | 1 | 1 | 0 | OK | Kapitus claim paid over 60 months at 6.0% |
| LDR payment months | 54 | 54 | 0 | OK | Payments must end by May 2031 |
| IRS payment months | 54 | 54 | 0 | OK | Payments must end by May 2031 |
| SBA plus Kapitus claim total | $509,406.35 | $509,406.35 | - | OK | Must equal difference between GUC scenarios |
| GUC scenario difference | $509,406.35 | $509,406.35 | - | OK | Fully unsecured less fully secured claim pool |
| Other GUC present value | $237,424.12 | $237,424.12 | ($0.00) | OK | Discounted at 2.75% over 60 monthly payments |

**MODEL STATUS** **PASS**

## Sources and Audit Notes

| Item | Value / Units | Period | Source | Reference | Notes |
|---|---|---|---|---|---|
| Operating receipts and disbursements | Monthly dollars | June-November 2026 | Cash Flow Projections.pdf | Handwritten six-month form | Averages feed Assumptions and Monthly Projection |
| Stearns secured claim | $81,806.67 at 6.0%; 60 months | Plan term | Proof of Claim 9-1 and proposed treatment | Claim 9-1 | Monthly payment calculated with PMT |
| Regions secured claim | $235,000 at 6.0%; 120 months | Plan term | User-provided proposed treatment | Conversation instruction | Only first 60 months appear in this projection |
| Ben Martin secured claim | $90,000 at 6.0%; 120 months | Plan term | User-provided proposed treatment | Conversation instruction | Only first 60 months appear in this projection |
| Professional fees | $30,000 over 24 months | Plan term | User-provided proposed treatment | Counsel $18k; accountant $6k; trustee $6k | Net of retainers/interim compensation |
| Louisiana priority tax claim | $2,805.69 at 10.5%; 54 projection months | Through May 2031 | Louisiana Department of Revenue proof of claim | User-provided claim amount | Paid within five years after petition |
| IRS priority tax claim | $93,785.94 at 7.0%; 54 projection months | Through May 2031 | IRS proof of claim | User-provided claim amount | Paid within five years after petition |
| Revenue adjustment | 90% of six-month average | Five-year projection | User instruction | Assumptions B8 | Applies to sales and other receipts |
| SBA disputed claim | $150,263.96 at 3.75%; 60 months | Plan term | User-provided claim amount and rate | Assumptions row 29 | Monthly deposits to disputed claims reserve |
| Kapitus disputed claim | $359,142.39 at 6.0%; 60 months | Plan term | User-provided claim amount and rate | Assumptions row 30 | Monthly deposits to disputed claims reserve |
| Other general unsecured claims | $237,424.12 present value at 2.75%; 60 months | Plan term | User-provided present-value treatment | Assumptions row 31 | Level monthly payments; excess cash retained |

# EXHIBIT C

## Definitions

Unless the context otherwise requires, the following terms shall have the following meanings whether capitalized or not in the Plan:

1. "*Accepting Ballot*" means a submitted Ballot to accept the Plan satisfying the requirements of the voting procedures.

2. "*Administrative Claim*" means a Claim for costs and expenses of administration of the Case pursuant to §§ 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including, (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate and operating the Debtor's business; and (b) Allowed Professional Fee Claims.

3. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

4. "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided in the Plan: (a) a Claim that either (i) is not Disputed or (ii) has been allowed by Final Order; (b) a Claim that is allowed, compromised, settled or otherwise resolved (i) pursuant to the terms of the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court by a Final Order or (iii) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (c) a Claim relating to a rejected Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been allowed by Final Order; or (d) a Claim or Equity Interest as to which as a Proof of Claim or Proof of Interest, as applicable, has been timely filed and as to which no objection has been filed.

5. "*Allowed Administrative Claim*" means an Administrative Claim which is an Allowed Claim.

6. "*Allowed Priority Non-Tax Claim*" means a Priority Non-Tax Claim which is an Allowed Claim.

7. "*Allowed Priority Tax Claim*" means a Priority Tax Claim which is an Allowed Claim.

8. "*Allowed Professional Fees*" means the amount of fees and costs incurred by professionals engaged by the Debtor in connection with the Chapter 11 Case which are (1) timely requested by application filed on or prior to the Administrative Claims Bar Date; and (2) which are allowed by order of the Bankruptcy Court.

9. "*Allowed Secured Claim*" means a Secured Claim which is an Allowed Claim.

10. "*Allowed General Unsecured Claim*" means a General Unsecured Claim which is an Allowed Claim.

11. "*Assets*" means all of the Debtor's property, rights, and interests that are property of the Estate pursuant to section 541 of the Bankruptcy Code.

12. "*Avoidance Action*" means any and all actual or potential claims or causes of action to avoid a transfer of property or an obligation incurred by the Debtor arising under §§ 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, or 553(b) of the Bankruptcy Code, or under similar or related state or federal statutes or common law, including fraudulent transfer and conveyance laws, in each case whether or not litigation to prosecute such Claim(s) or Cause(s) of Action was commenced prior to the Effective Date.

13. "*Ballot*" means the ballot form distributed to holders of Impaired Claims and Interests entitled to vote under the Plan.

14. "*Bankruptcy Code*" means the title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

15. "*Bankruptcy Court*" refers to the United States Bankruptcy Court for the Middle District of Louisiana or such other court having jurisdiction over the Case, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the Middle District of Louisiana.

16. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Case and the general, local and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

17. "*Bar Date*" means, with respect to any particular Claim, the applicable date set by the Bankruptcy Court as the last day for filing a Proof of Claim or a request for allowance of an Administrative Claim or a proof of interest, against the Debtor in this chapter 11 case for the applicable Claim or Interest.

18. "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law equity or otherwise. Causes of Action also include: (a) all rights of set off, counterclaim or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests or Proofs of Claims; (c) claims pursuant to §§ 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress and usury, and any other defenses set forth in § 558 of the Bankruptcy Code; and any state or foreign law fraudulent transfer or similar claim.

19. "*Chapter 11 Case*" refers to this case, 26-10439, under Subchapter V of Chapter 11 of the Bankruptcy Code in which the Debtor is the debtor-in-possession.

20. "*Claim*" means any claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor, whether or not assessed or asserted, or any claim, as defined in § 105(5) of the Bankruptcy Code, that can be asserted by the Debtor against any other person, third party or entity, whether or not assessed or asserted.

21. "*Claimant*" means a person or entity asserting a Claim.

22. "*Class*" means category of holders of Claims or Interests under § 1122(a) of the Bankruptcy Code.

23. "*Confirmation*" means entry of the Confirmation Order by the Bankruptcy Court on the docket of the Case.

24. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of this Case within the meaning of Bankruptcy Rules 5003 and 9021.

25. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and § 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Bankruptcy Court will consider confirmation of the Plan.

26. "*Creditor*" has the meaning assigned to such term in § 101(10) of the Bankruptcy Code.

27. "*Debtor*" means Ascension Towing and Recovery, LLC, as the debtor-in-possession in this Case.

28. "*Disputed Claim*" means a Claim, or any portion thereof: (a) which is listed in the Schedules as disputed, contingent, or unliquidated; or (b) as to which (i) a Proof of Claim has been Filed, (ii) an objection, or request for estimation, has been timely Filed (and not withdrawn) by any party-in-interest, and (iii) no Final Order has been entered thereon.

29. "*Distribution Date*" means the Initial Distribution Date and each subsequent date on which the Debtor makes distributions to holders of Allowed Claims pursuant to the terms of the Plan. After the Initial Distribution Date, subsequent Distribution Dates shall occur on the fifteenth (15th) calendar day that is at least one (1) calendar month after the immediately preceding Distribution Date, or as otherwise provided in the Plan.

30. "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in the Plan have been satisfied or waived in accordance with the Plan.

31. "*Estate*" means the estate of the Debtor in the Case created pursuant to § 541 of the Bankruptcy Code.

32. "*Estate Claim*" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or, a right to an equitable remedy for breach of performance

if such breach gives rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, belonging to the Estate.

33. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

34. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, is not subject to any pending stay and as to which the time to appeal, move for re-argument, reconsideration, or rehearing, or seek certiorari has expired and no appeal, motion for re-argument, reconsideration, or rehearing or petition for certiorari has been timely taken or filed, or as to which any appeal that has been taken, motion for re-argument, reconsideration, or rehearing that has been granted or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, re-argument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

35. "*General Unsecured Claim*" means any Claim that is not Secured and is not an Administrative Claim (including, for the avoidance of doubt, a Professional Fee Claim), Convenience Claim, or a Priority Tax Claim.

36. "*Governmental Unit*" has the meaning set forth in § 101(27) of the Bankruptcy Code.

37. "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

38. "*Initial Distribution Date*" means the fifteenth (15) calendar day of the first calendar month after the Effective Date.

39. "*Insider*" has the meaning set forth in § 101(31) of the Bankruptcy Code, and includes, but is not limited to, Frank Credidio.

40. "*Interest*" means any common stock, limited liability company interest, equity security (as defined in § 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any debtor.

41. "*Lien*" has the meaning set forth in § 101(37) of the Bankruptcy Code.

42. "*Non-Priority Tax Claim*" means a tax Claim that is not an Administrative Claim or a Priority Tax Claim.

43. "*Person*" has the meaning set forth in § 101(41) of the Bankruptcy Code.

44. "*Petition Date*" means May 19, 2026, the date on which the Debtor commenced the Case by Filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

45. "*Plan*" means this subchapter V plan, including all exhibits, supplements, appendices, and schedules hereto, either in its present form or as they may be altered, amended, or modified from time-to-time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

46. "*Priority Claim*" means any Claim, or portion thereof, entitled to priority under § 507(a) of the Bankruptcy Code.

47. "*Priority Tax Claim*" means any Priority Claim (or portion of a Claim) held by a Governmental Unit that is entitled to priority under § 507(a)(8) of the Bankruptcy Code.

48. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

49. "*Professional*" means an Entity retained in the Case pursuant to a Final Order in accordance with §§ 327, 363, and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to §§ 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

50. "*Professional Fees*" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) incurred by a Professional in the Chapter 11 Case on or after the Petition Date and through and including the Confirmation Date that the Bankruptcy Court has not denied by Final Order. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Professional Fees.

51. "*Professional Fee Applications*" means applications filed pursuant to sections 330, 331, or 503(b)(4) of the Bankruptcy Code for allowance of Administrative Claims relating to the compensation and reimbursement of expenses of professionals employed pursuant to an order of the Bankruptcy Court under sections 327 or 1103 of the Bankruptcy Code for services performed and expenses incurred after the Petition Date and prior to the Effective Date.

52. "*Professional Fee Claims*" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) incurred by a Professional in the Case on or after the Petition Date and through and including the Confirmation Date that the Bankruptcy Court has not denied by Final Order. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees

or expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

53. "*Projected Disposable Income*" has the meaning set forth in § 1191(d) of the Bankruptcy Code.

54. "*Proof of Claim*" means a proof of Claim filed against the Debtor in the Case.

55. "*Reorganized Debtor*" means the Debtor as reorganized on and after the Effective Date pursuant to the provisions of the Plan.

56. "*Retained Causes of Action*" means any and all claims, demands, rights, defenses, setoffs, counterclaims, suits, debts, sums of money, damages, judgments, remedies, causes of action, and rights of recoupment, whether known or unknown, in law, equity, or otherwise, that the Debtor or the Estate holds or may hold as of the Effective Date, including, without limitation:

a. All Causes of Action relating to the damages caused by Bridget Arceneaux, Kristy Jaeger, Aaron Arceneaux, and Lance Jaeger;

b. All Causes of Action relating to the damages caused by Legal Zoom;

c. All Causes of Action relating to the damages caused by Falcon Equipment Finance;

d. all Avoidance Actions and recoveries under chapter 5 of the Bankruptcy Code, including actions under §§ 502(d), 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, and 553;

e. all claims or causes of action listed or described in the Debtor's Schedules, Statement of Financial Affairs, or any other filing in the Bankruptcy Case, and all claims discovered after the Effective Date; and

f. any and all other claims, rights, and causes of action not expressly released, waived, or settled under this Plan or by order of the Bankruptcy Court.

57. "*Secured*" means, when referring to a Claim: (a) secured by a valid, perfected, and enforceable lien on collateral to the extent of the value of such collateral, as determined in accordance with § 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to § 553 of the Bankruptcy Code.

58. "*Subchapter V*" refers to §§ 1181 to 1195 of the Bankruptcy Code, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

59. "*Substantial Consummation*" shall have the meaning set forth in § 1101(2) of the Bankruptcy Code.

60. "*Subchapter V Trustee*" means and refers to, the duly appointed, acting and authorized subchapter V trustee, Leo D. Congeni.

61. "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of § 1124 of the Bankruptcy Code.

62. "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

63. "*U.S. Trustee*" means the Office of the United States Trustee for Region 5.

# # #